[Cite as *State v. Iakobets*, 2017-Ohio-910.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 27974 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SERGII IAKOBETS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 15 01 0124 |

DECISION AND JOURNAL ENTRY

Dated: March 15, 2017

HENSAL, Judge.

{¶1} Sergii Iakobets appeals a judgment of the Summit County Court of Common Pleas that convicted and sentenced him for felonious assault and endangering children. For the following reasons, this Court affirms.

I.

{¶2} On December 21, 2014, Mr. Iakobets and his wife brought their five-month-old daughter E.I. to the hospital for fussiness and inconsolable crying. An examination revealed that E.I. had a bruise on her cheek, subdural hematomas, retinal hemorrhaging, retinoschisis, and multiple fractures of her ribs that were in the process of healing. While at the hospital, E.I. also experienced seizures. After ruling out other causes, doctors concluded that E.I. had suffered abusive head trauma as a result of violent shaking.

{¶3} Upon interviewing E.I.'s parents, police learned that they had taken turns attending church that day. According to Mr. Iakobets, when his wife left for church around 2:00

p.m., E.I. was sleeping. Around 3:00 p.m., E.I. woke up crying. Mr. Iakobets fed her several ounces of milk, but she was still crying, so he moved her legs in an attempt to relieve her gas. She was still crying at 4:00 p.m. when Mr. Iakobets' wife returned home. Throughout the rest of the day, E.I. continued to be very fussy and also vomited on Mr. Iakobets. Around 11:00 p.m., the Iakobetses brought her to the hospital. Mr. Iakobets admitted that, in trying to console E.I., he did grab her under her arms and jostled her around, but alleged that he did not shake her seriously.

{¶4} The Grand Jury indicted Mr. Iakobets for felonious assault and endangering children. A jury found him guilty of the offenses, and the trial court sentenced him to a total of 10 years imprisonment. Mr. Iakobets has appealed, assigning two errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY ALLOWING THE TESTIMONY OF DR. RICHARD STEINER AS REBUTTAL EVIDENCE.

{¶5} Mr. Iakobets argues that the trial court incorrectly allowed the State to call Dr. Richard Steiner on rebuttal. During its case-in-chief, the State called Dr. John Melville, who testified that he is a child-abuse pediatrician for the hospital. According to Dr. Melville, the only explanation for all of E.I.'s injuries is that she suffered abusive head trauma as a result of shaking. During his case, Mr. Iakobets called a doctor who testified that shaking does not explain E.I.'s injuries and that some of them may have been the result of her not breathing during a seizure. He also opined that the broken ribs could have been a result of E.I. having temporary brittle bone disease. Over Mr. Iakobets's objection, the State called Dr. Steiner, a different child-abuse pediatrician for the hospital, on rebuttal. Dr. Steiner testified that temporary brittle bone disease does not exist and that E.I.'s injuries can only be explained by violent shaking.

**{¶6}** "Rebutting evidence is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence." *State v. McNeill*, 83 Ohio St.3d 438, 446 (1998). "A party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and [is not testimony that should have been presented] in the rebutting party's case-in-chief." *Phung v. Waste Mgmt. Inc.*, 71 Ohio St.3d 408, 410 (1994). The trial court has discretion to determine which proper rebuttal evidence may be admitted. *State v. Carrasquillo*, 9th Dist. Lorain No. 09CA009639, 2010-Ohio-5063, ¶ 16. Its decision will not be reversed absent an abuse of discretion. *McNeill* at 446. Abuse of discretion connotes more than simply an error in judgment; the court must act in an unreasonable, arbitrary, or unconscionable manner. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶7}** Mr. Iakobets argues that Dr. Steiner's testimony about temporary brittle bone disease was not proper rebuttal evidence because the issue was addressed during the State's case-in-chief. He notes that the State asked Dr. Melville about brittle bone disease on direct examination. He then asked Dr. Melville about temporary brittle bone disease on cross-examination. According to Mr. Iakobets, because the State had the opportunity to ask Dr. Melville about temporary brittle bone disease on redirect or by calling a different expert on the issue during its case-in-chief, such evidence could not be presented on rebuttal.

**{¶8}** On cross-examination, Mr. Iakobets asked Dr. Melville whether he was familiar with temporary brittle bone disease. The doctor answered that he knew that it had been proposed as a diagnosis, but that he did not believe there was enough evidence to justify using it as a diagnosis. He also explained that it had been proposed as affecting children up to six months old

and that it was different than brittle bone disease, which is a genetic disorder called osteogenesis imperfecta. The State did not ask Dr. Melville any questions about temporary brittle bone disease on redirect.

{¶9} Contrary to Dr. Melville's description of temporary brittle bone disease on cross-examination, Mr. Iakobets's expert testified that temporary brittle bone disease is a real condition that was discovered in the mid-1990s through the study of children who experienced bone fractures under normal handling while in the hospital. He explained that E.I. would be susceptible to the disease because she was born premature, which could have led to a delay in her acquiring all of the minerals that are necessary for strong bones. Mr. Iakobets's expert testified that, once children suffering from the condition begin to mineralize properly, they catch up and no longer have weak bones.

{¶10} Upon review of the record, we conclude that Dr. Steiner's testimony about temporary brittle bone disease was proper rebuttal testimony. The fact that Mr. Iakobets raised the issue on cross-examination of one of the State's witnesses does not make it part of the State's case-in-chief. *See State v. Sullivan*, 9th Dist. Wayne No. 98CA0019, 1999 WL 11265, *4 (Jan. 13, 1999) (explaining that, during its case-in-chief, the prosecution "must present evidence which, if believed, would establish each element of the offense[.]"). In addition, the fact that the State could have asked Dr. Melville about temporary brittle bone disease, a disease he denied exists, on redirect also does not make it part of the State's case-in-chief. *Carrasquillo*, 9th Dist. Lorain No. 09CA009639, 2010-Ohio-5063 at ¶ 17 ("[R]edirect testimony is generally considered to be evidence clarifying matters raised on cross-examination, not new evidence."). The issue of temporary brittle bone disease only became material after Mr. Iakobets's expert witnesses

offered it as an explanation for E.I.'s fractures. We, therefore, conclude that the trial court correctly allowed the State to call Dr. Steiner about temporary brittle bone disease on rebuttal.

{¶11} Mr. Iakobets also argues that the trial court allowed Dr. Steiner to testify about issues other than temporary brittle bone disease that were beyond the scope of rebuttal. We note, however, that Mr. Iakobets never objected to Dr. Steiner's testimony as being outside the scope of rebuttal. He, therefore, has forfeited his argument. Crim.R. 52(B). Although Mr. Iakobets has not forfeited consideration of plain error, he has not developed a plain error argument in his appellate brief, and this Court declines to construct one for him. *State v. Thomas*, 9th Dist. Summit No. 27266, 2015-Ohio-2935, ¶ 15. Mr. Iakobets's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE OF OHIO FAILED TO PROVE EACH AND EVERY ELEMENT OF THE CRIME OF CHILD ENDANGERING BEYOND A REASONABLE DOUBT.

{¶12} Mr. Iakobets argues that his child endangering conviction is against the manifest weight of the evidence. If a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶13} Mr. Iakobets notes that his child endangering offense was based on the rib fractures that E.I. suffered, which Dr. Melville testified occurred seven to ten days before the Iakobetses brought her to the hospital. He argues that the State did not present any evidence about who was caring for E.I. when the fractures occurred. According to Mr. Iakobets, because the State failed to prove that he had an opportunity to cause the fractures to E.I., let alone that he actually did cause them, his child-endangering conviction is against the manifest weight of the evidence.

{¶14} Dr. Melville testified that children who have suffered critical abusive head trauma frequently also have rib fractures that are in the process of healing. He explained that the rib fractures are the result of compression of the child's body. Squeezing and shaking the child becomes a way of managing the child's crying, but it can escalate over time and eventually reach a threshold where critical injury occurs. In an interview with police, Mr. Iakobets admitted that he had held E.I. tightly in the past and that he would hold E.I. under her arms while shaking her, albeit claiming that he did so only a little bit to scare her so that she would stop crying.

{¶15} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. Upon review of the record, we cannot say that the jury lost its way when it chose to believe Dr. Melville's testimony about the probable cause of the rib fractures, which were supported by Mr. Iakobets's admissions about the way he handled E.I. We, therefore, conclude that Mr. Iakobets's child endangering

conviction was not against the manifest weight of the evidence. Mr. Iakobets's second assignment of error is overruled.

III.

**{¶16}** Mr. Iakobets's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.